HILYER v HOLE

Docket No. 48181. Submitted November 12, 1981, at Detroit.—Decided
    March 4, 1982. Leave to appeal applied for.

William N. Hole, D.O., and David H. Prigg, D.O., performed a
    female sterilization procedure known as a tubal ligation on
    Cecilia Hilyer in Riverside Osteopathic Hospital, which is
    owned and operated by Detroit Osteopathic Hospital. At that
    time, Dr. Prigg was a second-year resident in obstetrics and
    gynecology and was acting under the supervision of Dr. Hole.
    Subsequently, Cecilia Hilyer and her husband filed suit against
    Dr. Hole, Dr. Prigg, Detroit Osteopathic Hospital, American
    Cystoscope Makers, Inc., and Liebel Flarsheim Company in
    Wayne Circuit Court, alleging that during the surgical proce-
    dure, which included the use of electronic instruments, a hole
    was negligently burned in Cecilia Hilyer's colon, resulting in
    peritonitis and requiring a colostomy. Subsequently, upon stipu-
    lation, the claims against American Cystoscope and Liebel
    Flarsheim were dismissed. The court, Harold Hood, J., entered
    judgment on a jury verdict of no cause of action for the
    remaining defendants. The plaintiffs appeal alleging that: (1)
    the trial court erred in excluding from evidence portions of the
    deposition of an expert witness, the developer of certain instru-
    ments used in the surgical procedure; (2) the trial court erred
    when it instructed the jury to consider Dr. Prigg's skill, care,
    and diligence or failure to possess and use such when he
    operated on Cecilia Hilyer in comparison to the diligence and
    skill other graduate medical residents in a hospital in that
    locality would ordinarily possess and exercise under similar
    circumstances; (3) the trial court erred in allowing each defen-
    dant represented by a different attorney to get three peremp-

REFERENCES FOR POINTS IN HEADNOTES

[1] 23 Am Jur 2d, Despositions and Discovery §§ 119, 149.
    Construction of statute or rule admitting in evidence deposition of
        witness absent or distant from place of trial. 94 ALR2d 1172.
[2] 5 Am Jur 2d, Appeal and Error § 623.
[3] 47 Am Jur 2d, Jury §§ 260, 261.
    Number of peremptory challenges allowable in civil case where
        there are more than two parties involved. 32 ALR3d 747.

tory challenges to the prospective jury panel; and (4) the verdict reached by the jury was against the great weight of evidence presented at trial. *Held:*

1. There was no manifest abuse of discretion in the trial court's exclusion of portions of the expert witness's deposition. The excluded evidence was outweighed by testimony from the same expert witness which indicated that Cecilia Hilyer's condition was not consistent with a thermal injury and did not indicate a breach of the proper standard of care.

2. There was no manifest injustice in the trial court's instruction regarding the standard of care of Dr. Prigg in performing the surgery. Furthermore, the issue was not preserved for appeal since plaintiff's counsel failed to object to the instruction and failure to object to jury instructions fails to preserve the issue for appeal absent a finding of manifest injustice.

3. The trial court did not err in allowing each defendant represented by a different attorney to have three peremptory challenges to the jury panel since the various defendants had adverse interests.

4. The verdict was not against the great weight of the evidence since there was credible evidence presented by both plaintiffs and defendants regarding the cause of Cecilia Hilyer's perforated bowel and the question came down to a jury determination regarding whether or not there was a breach of the standard of care by the defendants.

Affirmed.

1. EVIDENCE — DEPOSITIONS.

A trial court has discretion in ruling on the admissibility of a deposition, or portions of a deposition, and the court's exercise of discretion will be upheld unless an abuse of discretion is manifest.

2. APPEAL — JURY INSTRUCTIONS.

A failure to make a timely objection to a jury instruction precludes appellate review of the propriety of the instruction in the absence of manifest injustice.

3. TRIAL — PEREMPTORY CHALLENGES — COURT RULES.

All parties in a civil case aligned on the same side, represented by different attorneys and having adverse interests are allowed three peremptory challenges to prospective jurors; parties should be considered as having adverse interests where many of the allegations against the parties were based on separate grounds of liability and negligence, separate answers were filed

by the parties, and some parties could have been found liable and others found not liable (GCR 1963, 511.5).

*Hurwitz, Karp & Wygonik,* for plaintiff.

*Dice, Sweeney, Sullivan & Feikens, P.C.* (by *Robert F. Riley),* for defenant Hole.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen,* for defendants Prigg and Detroit Osteopathic Hospital.

Before: M. F. CAVANAGH, P.J., and ALLEN and MACKENZIE, JJ.

PER CURIAM. This is a medical malpractice case in which the jury returned a verdict of no cause of action in favor of the defendants. Plaintiffs appeal from the judgment entered on this verdict.

Plaintiff Cecilia Hilyer was admitted to Riverside Osteopathic Hospital, which is owned and operated by Detroit Osteopathic Hospital, for a female sterilization procedure known as a tubal ligation, for which she had given written consent. The surgical procedure was performed by defendants Dr. Prigg and Dr. Hole, both osteopathic physicians. At the time, Dr. Prigg was a second-year resident in obstetrics and gynecology and was acting under the supervision of Dr. Hole, a board-certified specialist in obstetrics and gynecology. Plaintiffs contend that during the surgical procedure, which included the use of electronic instruments, a hole was negligently burned in plaintiff Cecilia Hilyer's colon, resulting in peritonitis and requiring a colostomy. Defendants assert that, if plaintiff Cecilia Hilyer suffered a bowel burn during the course of the procedure, it was the result of the existence of an electrostatic field in the

abdomen which resulted in a spark for reasons unknown but not because of any negligence on the part of Dr. Prigg. Furthermore, defendants contend that the chronic pelvic inflammatory disease plaintiff Cecilia Hilyer was suffering from, coupled with a liver flare-up immediately following the tubal ligation, may have been the cause of the peritonitis but, again, was not the result of anything improperly done by Dr. Prigg.

The first issue plaintiffs raise on appeal is that the trial court erred in excluding portions of the deposition testimony by Dr. Siegler, the developer of the Siegler forceps used in this type of surgical procedure. The omitted testimony concerns statements by Dr. Siegler that he was not familiar with the techniques used by the defendants, that he had not seen these techniques in any literature, and that he would not do the same thing. In excluding the testimony, the trial court concluded that, since Dr. Siegler had not testified as to the standard of practice regarding the use of Siegler forceps, his statement that "It's hard for me to make a value judgment, because I am not familiar with the procedure" showed that he was not qualified to judge whether or not defendants had deviated from the requisite standard of care. Plaintiffs contend that this exclusion was error because Dr. Siegler testified as an expert witness and because other testimony from Dr. Siegler was allowed to be presented to the jury.

A trial court has discretion in ruling on the admissibility of a deposition, or portions of a deposition, and the court's exercise of discretion will be upheld unless an abuse of discretion is manifest. *Kueppers v Chrysler Corp,* 108 Mich App 192, 205; 310 NW2d 327 (1981), *Valley National Bank of Arizona v Kline,* 108 Mich App 133, 140; 310 NW2d 301 (1981). Although the fact that the de-

veloper of the Siegler forceps was unfamiliar with the defendants' method of using the instruments may be relevant to the standard of care to which the doctors will be held, we find that the exclusion of portions of Dr. Siegler's testimony by the trial court was harmless.

First, we note that in his deposition Dr. Siegler revealed that he had not used the instruments in three or four years, and Dr. Edgerton, an expert witness for the plaintiffs, had testified that there was a great difference of opinion among experts with respect to the use of the electrosurgical equipment. Thus, the excluded portion of Dr. Siegler's deposition testimony in which he stated that he was unfamiliar with defendants' techniques was not probative that defendants breached the standard of care; Dr. Siegler appears not to have been qualified to testify regarding the standard of care.

Second, Dr. Siegler's conclusion, which was presented to the jury, stated that he saw nothing in the medical reports to indicate that a thermal injury (caused by a spark from the instruments used) was involved and that such a perforation would have resulted in evidence of intestinal contents in the peritoneal cavity. (Dr. Hole had already testified that during his examination of plaintiff Cecilia Hilyer he had found no fecal matter in the abdomen and that such matter would have been present if there had been a bowel perforation.) We conclude that the excluded evidence was outweighed by testimony from the same expert witness which indicated that plaintiff Cecilia Hilyer's condition was not consistent with a thermal injury and a breach of the standard of care. We find no manifest abuse of discretion in the trial court's exclusion of portions of the expert witness's deposition.

Plaintiffs also alleged that the trial court erred when it instructed the jury to consider defendant Dr. Prigg's skill, care, and diligence, or failure to possess and use such when he operated upon plaintiff Cecilia Hilyer, in comparison to the diligence and skill other graduate medical residents in a hospital in that locality would ordinarily possess and exercise under similar circumstances. We find no merit to this allegation. Furthermore, this issue may not have been preserved for appeal. When the court informed counsel that it would not instruct the jury that a second-year resident should be held to the same standard of care as a specialist, plaintiffs' counsel did not specifically object nor request that such an instruction be given. Failure to object to instructions constitutes a failure to preserve the issue for appeal absent a finding of manifest injustice. *People v Handley,* 101 Mich App 130, 136; 300 NW2d 502 (1980), *People v Dixon,* 84 Mich App 675, 685; 270 NW2d 488 (1978). We find no manifest injustice in the action of the trial court.

Plaintiffs also contend that the trial court erred in allowing each defendant represented by a different attorney to get three peremptory challenges, which amounted to a total of twelve peremptory challenges for the defendants, when plaintiffs were only allowed nine peremptory challenges. GCR 1963, 511.5 provides in part:

"* * * Each party in a civil case may peremptorily challenge 3 jurors. In civil cases 2 or more parties on the same side are considered a single party for purposes of peremptory challenge. However, where multiple parties having adverse interests are aligned on the same side, 3 peremptory challenges shall be allowed to each party represented by a different attorney and, in such cases, the opposite side may, in the discretion of the trial judge, be allowed a total number of peremptory

challenges not exceeding the total number of peremptory challenges allowed to said multiple parties."

At trial, the five defendants were represented by four attorneys; Dr. Prigg and the Detroit Osteopathic Hospital were represented by the same attorney. Plaintiffs argue that the defendants presented a community of interests which were not adverse to each other and therefore the number of peremptory challenges granted to the defendants was incorrect.

In *Reno v Heineman,* 56 Mich App 509; 224 NW2d 687 (1974), *lv den* 394 Mich 751 (1975), a case brought under the dramshop act, the plaintiff brought an action against three defendants who allegedly made an illegal sale of alcoholic beverages to the intoxicated driver who struck the plaintiff. The Court found no error in the trial court's grant of three peremptory challenges to each defendant, noting that the parties were represented by different attorneys and had filed separate answers to the plaintiff's complaint. With respect to "adverse interests", this Court said:

"The term 'adverse interests' is not defined by the court rule and we have been cited to no case which has heretofore defined this term for the purposes of GCR 1963, 511.5 nor has our search revealed any such case. Prior to the adoption of GCR 1963, 511.5 our Supreme Court employed a procedure similar to that announced in GCR 1963, 511.5 for determining whether multiple parties in a civil action are each entitled to their own peremptory challenges. See 2 Honigman & Hawkins, Michigan Court Rules Annotated (2d ed), p 467. Despite language in *Stroh v Hinchman,* 37 Mich 490 (1877), to the effect that the right of separate challenge is to be accorded to 'each defendant who pleads separately by different counsel', the Court, subsequently, was not always content to rest its decision allowing separate challenge solely on this basis. In later cases, as further

justification for its action, the Court considered such factors as whether the defendants were interposing different defenses; whether one of the defendants in an action could be found liable and another defendant in the same action found not liable; and, whether the defendants could be found liable to the same extent, for the same reason or in the same manner. See *Yonkus v McKay,* 186 Mich 203; 152 NW 1031 (1915); *Levyn v Koppin,* 183 Mich 232; 149 NW 993 (1914). These same considerations, we feel, should be examined in reaching any determination as to whether multiple parties on the same side in a civil action have 'adverse interests' as that term is used in GCR 1963, 511.5." *Reno v Heineman,* 56 Mich App 509, 514-515.

See also *Stitt v Mahaney,* 72 Mich App 120; 249 NW2d 319 (1976), *rev'd on other grounds* 403 Mich 711; 272 NW2d 526 (1978), and *Wilson v W A Foote Memorial Hospital,* 91 Mich App 90; 284 NW2d 126 (1979).

Numerous allegations were made by plaintiffs against each of the five original defendants in the case. Many of the allegations were based on separate grounds of liability and negligence. Separate answers were filed by Detroit Osteopathic Hospital and Dr. Prigg, Dr. Hole, and American Cystoscope and Cybron Corporation (Liebel Flarsheim Company).

In applying the criteria for determining adverse interests set out in *Reno v Heineman, supra,* we find that four of the five parties pled separately. Furthermore, the hospital personnel obviously interposed different defenses than the manufacturer defendants because the theories of liability were different. Some defendants could have been found liable and others found not liable. We conclude that there was no error in the trial court's finding of the existence of adverse interests.

Finally, plaintiffs contend that the verdict

reached by the jury should not be allowed to stand because it was against the great weight of evidence presented at trial. We find that, because there was credible evidence presented by both plaintiffs and defendants regarding the cause of plaintiff Cecilia Hilyer's perforated bowel, the question came down to a jury determination regarding whether or not there was a breach of the standard of care by the defendants. We cannot say that the trial court abused its discretion in denying plaintiffs' motion for a new trial, nor can we say that the jury verdict was against the great weight of the evidence. *Drouillard v Metropolitan Life Ins Co,* 107 Mich App 608; 310 NW2d 15 (1981).

Affirmed.